# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RICHARD ARJUN KAUL, *et al.*,** | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 19-cv-3050 (TSC) |
| **FEDERATION OF STATE MEDICAL BOARDS, *et al.*,** | ) | |
| Defendants. | ) | |

# <u>MEMORANDUM OPINION</u>

Plaintiffs Richard Kaul and Arnold Feldman, proceeding *pro se*, have sued over thirty companies, medical boards, and individuals, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Clayton Act, the Sherman Act, and the Due Process Clause of the United States Constitution. Various defendants have filed five motions to dismiss (ECF Nos. 23, 67, 68, 70, & 112), a request for judicial notice (ECF No. 69), and two motions to sever Kaul's claims and transfer them to the District Court for the District of New Jersey, or alternatively, to dismiss the claims (ECF Nos. 47 & 82). Plaintiffs oppose the first motion to sever and transfer. Feldman opposes each of the motions to dismiss his claims.[1] For the reasons

---

[1] A litigant may proceed in federal court on behalf of himself or by properly admitted counsel, *see* 28 U.S.C. § 1654, but a layperson cannot represent another person in a court proceeding, *see Georgiades v. Martin–Trigona,* 729 F.2d 831, 834 (D.C. Cir. 1984). Kaul did not sign the responsive filings regarding the motions to dismiss filed by Defendants California State Board of Medical Examiners, Mississippi State Board of Medical Examiners, and Richard Stanley, and no counsel has appeared on his behalf as to those motions. Feldman, as a *pro se* plaintiff, cannot represent Kaul. Accordingly, the court finds that Kaul did not respond to these motions.

set forth below, the court will GRANT the New Jersey Defendants'[2] motions to sever and transfer, (ECF Nos. 47 & 82), and will therefore DENY without prejudice the New Jersey Defendants' motions to dismiss. (ECF Nos. 47, 67, 82, & 112). The court will also GRANT the other motions to dismiss, (ECF Nos. 23, 68, & 70), and will DENY the request for judicial notice as moot. (ECF No. 69.)[3]

## I.     BACKGROUND

### A.  Factual Background

#### 1.  Plaintiff Kaul

Plaintiff Richard Kaul was formerly a board-certified anesthesiologist licensed to practice medicine in New Jersey. (ECF No. 1, Compl. ¶ 21.) He purports to be a resident of New York.[4]

_____

[2]  The "New Jersey Defendants" refers to all Defendants who joined in the February 13, 2020, Omnibus Motion to Sever and Transfer (ECF No. 82, Omnibus Mot.), as well as those Defendants who filed an earlier Motion to Sever and Transfer or alternatively Dismiss for Failure to State a Claim. (ECF No. 47, Allstate Mot). In Footnote 2 of the Omnibus Motion, the New Jersey Defendants note that "both sets of Defendants respectfully request that the Court decide this omnibus Motion to Sever and Transfer simultaneously with the . . . previously filed motion." (Omnibus Mot. at 1 n.2.) Given that both motions are functionally identical, the court will proceed as requested. Thus, the "New Jersey Defendants" are: Allstate Insurance Company, Richard Crist, GEICO, GEICO Indemnity, GEICO General Ins. Co., GEICO Casualty, Fourth Edition Inc. f/k/a North Jersey Media Group Inc. (sued as North Jersey Media Group, Inc.), Lindy Washburn, Dr. Peter Staats, the American Society of Interventional Pain Physicians, the New Jersey Board of Medical Examiners ("NJBME"), Former New Jersey Governor Christopher J. Christie, Dr. Andrew Kaufman, Doreen Hafner, Eric Kanefsky, Atlantic Health System, Dr. Robert F. Heary, Dr. Marc Cohen, John P. Di Iorio, TD Bank, NA, Congress of Neurological Surgeons, Hackensack University Medical Center, Robert Garrett, Howard Solomon, Gregory Przybylski, and Steven Lomazow.

[3]  The court has considered the following responses filed by Plaintiffs: ECF No. 60, ECF No. 89, ECF No. 94, ECF No. 97, ECF No. 116.

[4]  Kaul claims to be a resident of New York, although the summonses provide a New Jersey address, and, on at least one occasion, documents mailed to Kaul by this court at his New York address of record were returned as undeliverable. (_See_ Compl.; ECF No. 4; ECF No. 5.)

(Compl. ¶ 21.)  Kaul's New Jersey medical license was revoked in 2014 for performing spine surgery on eleven patients without "proper training and experience," which "constituted gross and repeated malpractice, negligence, and incompetence."  *Kaul v. Christie* ("*Kaul I*"), No. 2:16-cv-2364, 2017 WL 2953680, at *1 (D.N.J. June 30, 2017).  Kaul alleges that Defendants have engaged in a massive conspiracy to "permanently eliminate [him] from the practice of medicine anywhere in the world."  (Compl. at 19.)  He brings five claims independently and three with Feldman.

In Count II, Kaul alleges that ten Defendants revoked his license in a conspiracy intended to increase their revenues, market share, and political power.  (Compl. ¶ 272.)  His allegations implicate former New Jersey Governor Christopher J. Christie, Dr. Andrew Kaufman (who testified against Kaul), the American Society of Interventional Pain Physicians and its former president, Dr. Peter Staats, Dr. Steven Lomazow (a business competitor), Doreen Hafner (Deputy Attorney General of New Jersey), Dr. Marc Cohen (a business competitor), the Congress of Neurological Surgeons and its president, Dr. Gregory Przybylski, and Dr. Robert Heary (attending physician at Atlantic Health System and Hackensack University Medical Center).  (Compl. ¶ 269.)

In Count III, Kaul claims that several Defendants conspired to destroy his reputation and medical practice so insurance companies could avoid paying him for services rendered to patients.  (Compl. ¶ 362.)  The allegations in Count III are directed at former Governor Christie, the GEICO Defendants,[5] Allstate New Jersey Insurance Company ("Allstate"), TD Bank, NA, Daniel Stolz (an attorney whose firm served as Chapter 7 trustee for Kaul's business' bankruptcy

---

[5]  Plaintiffs refer to defendants Government Employees Insurance Co., GEICO Indemnity, GEICO General Insurance Company, and GEICO Casualty as GEICO.  (Compl. ¶ 34.)

proceedings), John Di Iorio (an attorney who represented Kaul during the Chapter 7 proceedings), Richard Crist (Allstate chief operating officer), Jay Howard Solomon (administrative law judge who oversaw Kaul's administrative proceedings), Hafner, and Judge Brian Martinotti[6] (United States District Court for the District of New Jersey).  (Compl. ¶ 359.)

In Count IV, Kaul claims several Defendants further violated RICO by engaging in a conspiracy with the intent to destroy his practice and reputation and divert business to the Defendants' medical facilities and physicians.[7]  (Compl. ¶ 459.)

In Count V, Kaul alleges that four Defendants violated RICO by conspiring to destroy Kaul's reputation and his economic standing in order to divert his patients to facilities and physicians connected with Defendants.  (Compl. ¶ 564.)[8]

In Count VI, Kaul alleges that a number of Defendants violated the Clayton Act and Sherman Act by engaging in anticompetitive schemes intended to reduce the minimally invasive spinal surgery market.  (Compl. ¶¶ 637–700.)  These Defendants allegedly engaged in such schemes through fraud, political bribery, encouraging litigation or complaints by customers against doctors such as Plaintiffs, creating non-compete areas, and regulating who could perform fusion treatments.  (Compl. ¶¶ 637–700.)  The Complaint lists Defendants Kaufman, Staats,

---

[6]  Kaul claims that certain Defendants bribed Judge Martinotti to rule against him in a prior suit, after the original presiding judge recused himself when Kaul accused him of bias.  (Compl. ¶ 53; *see also* Allstate Mot. at 5 n.6.)

[7]  Kaul brings this claim against defendants Christie, Hackensack University Medical Center and its president, Robert Garrett, Atlantic Health Systems, Hafner, Lewis Stein (New Jersey attorney), NJBME, and Eric Kanefsky (former acting director of New Jersey Division Consumer Affairs).  (Compl. ¶ 459.)

[8]  Kaul brings this claim against Christie, Hackensack University Medical Center, Lindy Washburn (a journalist who published articles about Kaul), and North Jersey Media Group, Inc. (Compl. at 132.)

Przybylski, College of Neurological Surgeons, Heary, Cohen, Hackensack University Medical Center, Atlantic Health Systems, John Burdine, and Louisiana State Board of Medical Examiners ("LMB") under Count VI, but does not allege any facts against Defendants Burdine or LMB or any events occurring outside New Jersey.  (*See* Compl. ¶¶ 639–700.)

       2.  <u>Plaintiff Feldman</u>

Plaintiff Arnold Erwin Feldman is a resident of Florida, and was formerly licensed to practice medicine in Louisiana, Alabama, Mississippi, and California.  (Compl. ¶ 22.)  In 2013, Feldman was investigated for violating the Louisiana Medical Practice Act.  (Compl. ¶¶ 222–244.)  The investigation resulted in an administrative proceeding in 2016, in which the LMB ultimately fined Feldman and suspended his medical license.  (Compl. ¶¶ 222–244.)  *See also Feldman v. La. State Bd. of Med. Exam'rs*, No. 2018-ca-0033, 2018 WL 5830390 (La. Ct. App. Nov. 7, 2018) (affirming sanctions against Feldman).  Feldman contends that the 2013 investigation and the resultant administrative proceeding violated his right to due process. (Compl. ¶¶ 222–244.)

In Count I of the Complaint, Feldman asserts that Defendants violated RICO in two ways.  First, Feldman claims his medical license was illegally suspended through a scheme of bribery, obstruction of justice, perjury, and fraud by Defendants LMB, Cecilia Mouton (Executive Director and Director of Investigation for LMB), John Burdine (President of LMB), and Richard Stanley (legal counsel for LMB during Feldman's proceedings).  (Compl. ¶¶ 246– 267.)  Second, Feldman alleges that LMB then shared the record of his suspension via U.S. wires and mail with Defendants Federation of State Medical Boards ("FSMB"), California State Board of Medical Examiners ("CMB"), and Mississippi State Board of Medical Examiners ("MMB") despite knowing that the suspension was illegal and fraudulent.  (Compl. ¶¶ 246–267.)  Feldman

claims in both instances that Defendants used their political power against him to eliminate competition, and that this behavior thus constitutes a "pattern of racketeering" in violation of RICO.  (Compl. ¶¶ 246–267.)

### 3. Kaul and Feldman's Joint Claims

In Counts VII–IX, Feldman and Kaul allege that certain Defendants deprived them of their due process rights under color of law, violated the Eighth Amendment Excessive fines clause, and entered into an illegal interstate compact in violation of the Compact Clause of the United States Constitution.[9]  (Compl. ¶¶ 701–750.)  The Complaint implicates Defendants Christie (in his official capacity), Kaufman (in his official capacity), Przybylski (in his official capacity), Solomon (in his official capacity), Hafner (in her official capacity), Allstate, GEICO, NJBME, Mouton, LMB, CMB, and MMB.  (*See* Compl. ¶¶ 701–750.)

### 4. Other Related Litigation

Kaul has filed multiple suits raising similar claims.  In 2016, he filed a complaint in the Southern District of New York alleging similar RICO violations by the NJBME, several medical insurance companies, and individual actors, many of whom are named as Defendants in this case.  *Kaul I*, 2017 WL 2953680.  The Southern District of New York *sua sponte* transferred the case to the District of New Jersey, where Kaul's claims were eventually dismissed because they either duplicated claims raised previously in New Jersey state court, failed to state a claim, or were barred by sovereign immunity.  *Kaul v. Christie*, 372 F. Supp. 3d 206, 255 (D.N.J. 2019).

While *Kaul I* was pending, Kaul filed a second complaint in the Southern District of New York, which was likewise transferred to the District of New Jersey.  *Kaul v. Christie* ("*Kaul II*"),

---

[9]  Although these claims are brought by both Kaul and Feldman, Feldman's arguments are largely outlined separately.  (*See, e.g.*, Compl. ¶¶ 702(h), 748.)

No. 2:18-cv-8086, 2020 WL 967886 (D.N.J. Feb. 28, 2020).  The District of New Jersey found that *Kaul II* had "such significant overlap" with *Kaul I* that they were "essentially the same case."  *Id.* at *2.  *Kaul II* has been stayed until *Kaul I* is concluded.  *Id.* at *7–8.  A year after he filed *Kaul II*, Kaul filed a third case in the Southern District of New York, which was also transferred to the District of New Jersey.  *Kaul v. Schumer* ("*Kaul III*"), No. 2:19-cv-13477 (D.N.J. August 5, 2020).  *Kaul III* alleged a different conspiracy and named a different group of defendants from *Kaul I* and *Kaul II*; however, the claims in *Kaul III* rested on the outcome of *Kaul I*, so the case has likewise been stayed until *Kaul I* is concluded.  *Id.* at *4–5.

In 2019, Kaul joined another Plaintiff, Harshad Patel, in filing two suits in the Northern District of Georgia.  The first of these raised similar conspiracy claims to those raised by Kaul in his prior suits in New York and New Jersey.  *See Patel v. Christ* ("*Patel I*"), No. 1:19-cv-0612 (N.D. Ga. Mar. 26, 2019).  The second suit alleged a broad conspiracy to discriminate against healthcare providers of Indian descent.  *See Patel v. Crist* ("*Patel II*"), No. 1:19-cv-0739 (N.D. Ga. Apr. 2, 2019).  Both cases were transferred to the District of New Jersey and subsequently dismissed for lack of subject matter jurisdiction and failure to state a claim.  *Patel v. Crist*, No. 2:19-cv-8946, 2020 WL 6156751 (D.N.J. Oct. 20, 2020); *Patel v. Crist*, No. 2:19-cv-9232, 2020 WL 6156772 (D.N.J. Oct. 20, 2020).  In denying Plaintiffs' motion to amend their complaint a third time, the court noted that "Plaintiffs make virtually identical allegations" in both matters and "made no effort to address the factual shortcomings in either matter."  2020 WL 6156751, at *3.

In addition to these five suits, Kaul has also sued Stolz, an attorney who was a member of the firm that served as the Chapter 7 Trustee's counsel when Kaul's business, New Jersey Spine, entered into bankruptcy proceedings.  (*See* ECF No. 132, Ex. A.)  Kaul claimed Stolz was part of

a large conspiracy against him and, pursuant to that conspiracy, the bankruptcy Trustee failed to collect debts from Allstate and GEICO that Kaul believed he was owed. *Stolz v. Kaul*, No. 20-ap-1011-JKS, ECF No. 1 (Bank. N.J.). Kaul was permanently enjoined from suing Stolz in this or any matter without leave of the Bankruptcy Court for the District of New Jersey. *Stolz v. Kaul*, No. 20-ap-1011-JKS (Bankr. D.N.J. February 10, 2020); *In re N.J. Spine & Rehab., P.C.*, No. 13-bk-23366-JKS (Bankr. D.N.J. February 10, 2020).

## B. **Procedural History**

### 1. Motions to Sever and Transfer

The New Jersey Defendants[10] move to sever Kaul's claims from Feldman's and transfer the former to the District Court of New Jersey under Federal Rules of Civil Procedure 20(a) and 21,[11] contending that the claims should be severed for failing to meet the requirements for permissive joinder under Fed. R. Civ. P. 20. (ECF No. 47-1, Allstate Br. at 8–11.) The New Jersey Defendants argue that Feldman's and Kaul's claims are not logically related; the claims were "brought against different Defendants and revolve around actions purportedly taken during

---

[10] Defendants Allstate and Crist filed a Motion to Sever and Transfer on January 27, 2020 (the "first Motion to Sever and Transfer"). (Allstate Mot.) Defendants North Jersey Media Group, Inc., Washburn, Staats, American Society of Interventional Pain Physicians, GEICO, NJBME, Christie, Kaufman, Hafner, Kanefsky, American Health Systems, Heary, Cohen, and Di Iorio filed an Omnibus Motion to Sever and Transfer via a footnote in that Motion. (ECF No. 112, at 3 n.3.) Defendants College of Neurological Surgeons and TD Bank joined the Omnibus Motion via separate Motions for Joinder. (ECF No. 66; ECF No. 79.) Defendants Hackensack University Medical Center and Garrett filed a Motion to Dismiss and joined the Omnibus Motion via a footnote in that Motion. (ECF No. 112, at 3 n.3.) Defendants Solomon, Przybylski, and Lomazow joined the Omnibus Motion via a Motion to Set Aside Default and Stay Obligations to Plead in Response to the Complaint, (ECF No. 145), which this court granted via a Minute Order on September 23, 2020.

[11] In the alternative, the New Jersey Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. (Allstate Br. at 20–35.)

different time periods" and in different jurisdictions.  (Allstate Br. at 8–11.)  Thus, they argue,

Kaul's claim should be severed from Feldman's.  (*Id.* at 8–11.)  The New Jersey Defendants

further contend that this district is an improper venue for this case, and it would be in the interest

of justice to transfer the case to the District of New Jersey.  (*Id.* at 13–20.)

> 2.  Motions to Dismiss for Lack of Subject Matter Jurisdiction

Defendants MMB and CMB move to dismiss the claims against them for lack of subject

matter jurisdiction.  Defendants' central claim concerns sovereign immunity;[12] both MMB and

CMB claim to be arms of their respective state governments and thus immune from liability

under the Eleventh Amendment.  (ECF No. 68-1, MMB Br. at 3–9; ECF No. 70, CMB Br. at 11–

14.)

> 3.  Motion to Dismiss for Insufficient Process and Insufficient Service of
> Process

Defendant Stanley moves to dismiss the claims asserted against him on the basis that this

court lacks personal jurisdiction as a result of insufficient service of process under Federal Rules

of Civil Procedure 12(b)(4) and (5).  (ECF No. 23.)  Stanley contends Feldman failed to

effectuate adequate service of process within 90 days of commencing the action and cannot

establish proof of service.  (ECF No. 23-1, Stanley Br. at 5–6.)  Plaintiffs filed the Complaint on

October 1, 2019.  (*See* Compl.)  In late October 2019, the court reminded Plaintiffs they had 90

days from their time of filing to effectuate service and to otherwise comply with Rule 4

requirements.  (ECF No. 3, Pro Se Pl. Order.)  Stanley claims the Plaintiffs have disregarded

Federal Rule of Civil Procedure 4's requirements; Plaintiffs did not serve Stanley personally and

sent only a copy of the Complaint, and thus dismissal is appropriate.  (Stanley Br. at 5–6.)

---

[12]  Defendant CMB's Motion to Dismiss cites additional grounds for dismissal; lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## II.    LEGAL STANDARD

The court is mindful that *pro se* pleadings must be liberally construed, as they are held to "less stringent standards than formal pleadings drafted by lawyers." *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (internal quotation marks omitted).  Further, "[a]t the motion to dismiss stage . . . *pro se* complaints[ ] are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, this liberal standard "is not . . . a license to ignore the Federal Rules of Civil Procedure." *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014) (quotation marks and citations omitted).

### A.    <u>Motion to Dismiss or Transfer Based on Improper Venue</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) challenges the plaintiff's choice of venue.  A court should dismiss or transfer a complaint if the chosen venue is improper or inconvenient.  Fed. R. Civ. P. 12(b)(3).  To prevail on a motion to dismiss or transfer for improper venue, a defendant "must present facts that will defeat the plaintiff's assertion of venue," however the burden "remains on the plaintiff to prove that venue is proper when an objection is raised, since it is the plaintiff's obligation to institute the action in a permissible forum." *Roland v. Branch Banking & Trust Corp.*, 149 F. Supp. 3d 61, 67 (D.D.C. 2015) (internal quotation marks and citation omitted).  A court must accept a plaintiff's well-pled factual allegations as true, resolve any factual conflicts in plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff. *Hunter v. Johanns*, 517 F. Supp. 2d 340, 342 (D.D.C. 2007); *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 121 (D.D.C. 2003).  But

10

it need not accept a plaintiff's legal conclusions as true.  *2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001).

   **B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

   Federal courts are of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'"  *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).  Thus, plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

   In evaluating a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  But the court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept [plaintiffs'] legal conclusions."  *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  A motion to dismiss under 12(b)(1) "is

not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). And "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing, *inter alia*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### C. <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the court's personal jurisdiction. A plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendants. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet this burden, a plaintiff must allege "specific acts connecting the defendant[s] with the forum," *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001), including a showing that "the procedural requirements of effective service of process are satisfied." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002). In evaluating whether a plaintiff has established personal jurisdiction, the court "may receive and weigh affidavits and other relevant matter[s] to assist in determining the jurisdictional facts." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 41 (D.D.C. 2018) (quotation marks and citations omitted). However, "when deciding personal jurisdiction without an evidentiary hearing[,] . . . the court must resolve factual disputes in favor of the plaintiff." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

## III.    DISCUSSION

### A. **The New Jersey Defendants' Motions to Sever and Transfer Kaul Claims**

The New Jersey Defendants move to sever Kaul's claims from Feldman's and to transfer the former to the District Court of New Jersey under Federal Rules of Civil Procedure 20(a) and 21. (Allstate Mot.; Omnibus Mot. at 1.) [13]

1. Severance

i. *Legal Standard*

The court has the discretion to sever misjoined parties under Federal Rule of Civil Procedure 21 "to avoid prejudice to the parties or confusion to the jury." *Montgomery v. STG Int'l Inc.,* 532 F. Supp. 2d 29, 35 (D.D.C. 2008). In determining whether a party is misjoined for purposes of Rule 21, courts apply the permissive joinder requirements of Federal Rule of Civil Procedure 20(a). *Id.* (citing *Disparte v. Corp. Exec. Bd.,* 223 F.R.D. 7, 12 (D.D.C. 2004)). Under that Rule, plaintiffs may be joined in one action only if: (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a).

---

[13] Although Kaul responded to the Allstate Motion, Plaintiffs did not respond to the omnibus motion. Pursuant to the court's Orders from February 19, 2020, and June 25, 2020, it would be proper for this court to therefore treat these motions as conceded. (*See* ECF No. 84 ("Plaintiffs shall file their response no later than April 2, 2020. If the Plaintiffs do not respond by that date . . . , the court may treat the motion as conceded and sever/transfer the claims . . . ."); ECF No. 106 (resetting deadlines and admonishing that "if the Plaintiffs do not respond by [the new deadline] . . . , the court may treat the motion as conceded.").) Plaintiffs have had ample opportunity to argue against transfer and have failed to do so. Nonetheless, the court will consider the merits of the motions to sever and transfer as to all the New Jersey Defendants. The arguments in the omnibus motion and those in the first motion to sever and transfer—to which plaintiffs *have* responded—are virtually identical. Moreover, the facts relevant to each of the defendants are sufficiently similar to warrant a single, unified disposition of the motions. (*See* Omnibus Motion at 1 n.2.)

To satisfy the first prong, the claims sought to be joined must be "logically related" to one another. *Davidson v. D.C.*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974) (stating that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence")); *accord Disparte*, 223 F.R.D. at 10 (*citing Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). In order to satisfy the second prong of Rule 20(a), plaintiffs must show that there is "some common question of law or fact as to all of the plaintiffs' claims." *Davidson*, 736 F. Supp. 2d at 119–20. Each of these two prongs "are to be liberally construed in the interest of convenience and judicial economy" so as to "secure the just, speedy, and inexpensive determination" of the action. *Davidson*, 736 F. Supp. 2d at 119 (citation omitted).

Although the rule is to be construed liberally, "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte,* 223 F.R.D. at 12 (citation omitted). The court must remedy the misjoinder by severing "the claims brought by the improperly joined party." *Grant v. Salem*, 226 F.R.D. 1, 2 (D.D.C. 2004) (citing *Brereton v. Comm'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987); Fed. R. Civ. R. 21).

### ii. *Analysis*

The New Jersey Defendants contend that Kaul's claims should be severed because "the Complaint fails to allege that any of Plaintiffs' alleged injuries caused by [the purported] 'scheme' or 'pattern' arise out of any common transaction or occurrence," as required by the first prong of Rule 20(a). (Omnibus Mot. at 11 (citing Compl. ¶¶ 249–251, 362); *see also* Allstate Br. at 9.) "All that each physician has alleged is that at different times and by different licensing bodies, their medical licenses were revoked. They have not alleged that anything happened to them at the same time, in the same place or by the same licensing body." (ECF No. 134 at 3.)

Plaintiffs counter that the "illegal mechanism . . . of physician regulation perpetrated by all state medical boards" constitutes a "series of transactions/occurrences" "admitted to by defendant state medical boards." (ECF No. 116, Pls. Severability Opp. at 3.) Plaintiffs further allege that "defendants, in concert and conspiracy with Defendant Federation of State Medical Boards, caused permanent injuries to the economic standing and reputations of Plaintiffs Kaul and Feldman, through the abuse of this illegal and identical series of transactions/occurrences." (Pls. Severability Opp. at 3.)

Plaintiffs fail to set forth *any* facts to connect the two administrative proceedings which form the basis of their separate claims—proceedings which occurred "during different time periods in different territorial jurisdictions" and at the hands of separate administrative bodies. (*See* Omnibus Mot. at 11; Allstate Mot. at 9; *see also* Compl ¶¶ 114, 243 (noting that Kaul's medical license was revoked by the NJBME in 2014, while Feldman's medical license was suspended by the LMB in 2016).) The fact that the state licensing board defendants are members of the Federation of State Medical Boards, without more, is not sufficient to fulfill the first prong of Rule 20(a), even if the alleged injuries are similar. "The flexibility inherent in the logical relationship test does not give the court license to disregard the 'common transaction or occurrence' requirement of Rule 20(a)." *Davidson*, 736 F. Supp. at 121 (finding that "the plaintiffs' claims [were] improperly joined" where those claims arose "out of separate administrative proceedings" which occurred "on different dates" and involved different plaintiffs); *see also Grant*, 226 F.R.D. at 2 (finding that, because the events underlying plaintiffs' claims "were performed over a period of fifteen months, under varying circumstances," "the facts and circumstances of each plaintiff's claim var[ied] so substantially" that they did not satisfy the transaction or occurrence requirement of Rule 20, despite a single defendant and

parallel legal theories).  Accordingly, the court finds that Plaintiffs have not satisfied the

"transaction or occurrence" requirement of Federal Rule of Civil Procedure 20(a) and are thus

misjoined.

> ### 2.  Transfer

> #### i.  *Legal Standard*

A plaintiff must sue "in the proper venue" to "ensure[ ] that a district with some interest

in the dispute or nexus to the parties adjudicates the plaintiff's claims."  *Hamilton v. JPMorgan

Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015).  Under Federal Rule of Civil Procedure

12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the

case in a venue that the law deems appropriate.'"  *Johns v. Newsmax Media, Inc*., 887 F. Supp.

2d 90, 96 (D.D.C. 2012) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)).

Venue is proper: (1) in a district where "any defendant resides, if all defendants are residents of

the state in which the district is located"; (2) in a district in which "a substantial part" of the

events giving rise to the suit occurred; or (3) if venue would not be proper in any district for

either of those reasons, wherever the defendants are subject to personal jurisdiction.  28 U.S.C.

§ 1391(b).  "'When venue is challenged, the court must determine whether the case falls within

one of the three categories set out in § 1391(b).  If it does, venue is proper,' but, 'if it does not,

venue is improper, and the case must be dismissed or transferred under § 1406(a).'"  *King v.

Caliber Home Loans, Inc.*, 210 F. Supp. 3d 130, 133–34 (D.D.C. 2016) (alteration removed)

(quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 50 (2013)); *see

also* 28 U.S.C. § 1404(a) (providing that courts may transfer a civil case to a different venue

"[f]or the convenience of [t]he parties and witnesses," and "in the interest of justice").

If the court concludes that venue is improper, it must then decide whether to dismiss the

action or to transfer the case to a district where it could have been brought.  *See Hamilton*, 118 F.

Supp. 3d at 333 (citing 28 U.S.C. § 1406(a)). "The Supreme Court has inferred a congressional

purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles

'impede an expeditious and orderly adjudication . . . on the merits.'" *Sinclair v. Kleindienst*, 711

F.2d 291, 293–94 (D.C. Cir. 1983) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67

(1962)). While "[d]ismissal, instead of transfer, is appropriate when the plaintiff's claims suffer

from significant substantive deficiencies," whether to "dismiss or transfer the case is committed

to the sound discretion of the district court." *Hamilton*, 118 F. Supp. 3d at 333; *see also Naartex*

*Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

> ii. *Analysis*

The New Jersey Defendants aver that venue in this district is not proper under 28 U.S.C.

§ 1391(b). They contend that: (1) "Section 1391(b)(1) does not apply here because not all of the

defendants reside in the District of Columbia—in fact, nearly all of them reside elsewhere,"

(Omnibus Mot. at 15; Allstate Br. at 14); (2) Section 1391(b)(2) likewise does not apply because

"Plaintiffs have failed to allege that a substantial part of the events or omissions giving rise to

their claims have any connection to the District of Columbia whatsoever," (Omnibus Mot. at 15;

Allstate Br. at 14); and (3) "Section 1391(b)(3) also does not apply because Kaul's allegations

are nothing more than a rehash of his many pending lawsuits in New Jersey," and thus could

have been appropriately brought in that district. (Omnibus Mot. at 15; Allstate Br. at 14.)

Plaintiffs respond that "[t]he case is properly filed in the United States District Court for

the District of Columbia, because many of the Defendants conduct their political and other

business in the District of Columbia," and the District of Columbia "was the main location in

which the alleged schemes of racketeering were planned, and from which and through which

they were executed, using the US mail and wires." (Pls. Severability Opp. at 11, 13.) Plaintiffs

further contend that venue in New Jersey would be improper because "the Defendants have

corrupted the United States District Court for the District of New Jersey and one of the Defendants is a judge in this court." (*Id.* at 11.)

The court is persuaded by the New Jersey Defendants' arguments. In determining whether venue is proper under 28 U.S.C. § 1391(b)(2), "federal courts engage in 'a commonsense appraisal' of 'events having operative significance in the case.'" *Exelon Generation Co. v. Grumbles*, 380 F. Supp. 3d 1, 11 (D.D.C. 2019) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). While "[t]his section does not require a plaintiff to bring suit in a district where every event that supports an element of the claim occurred," it does require "a plaintiff to show that some considerable portion of the events occurred in their chosen forum." *Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93 (D.D.C. 2014). Plaintiffs argue that "[v]enue is appropriate in this District . . . because defendants reside or may be found in the District of Columbia and the alleged breaches occurred in the District of Columbia." (Compl. ¶ 5.) This contention is demonstrably false. As Plaintiffs themselves note, the defendants in this suit reside all over the United States, "in Louisiana, Mississippi, California, New Jersey, Pennsylvania, Washington, D.C., Virginia, Maryland, Illinois and Kentucky." (Pls. Severability Opp. at 13; *see also* Compl. ¶¶ 24–57.) Moreover, Plaintiffs' Complaint alleges merely that meetings "for the purpose of ensuring the illegal elimination of Plaintiff Feldman from the minimally invasive spine surgery market" occurred "behind closed doors in California + Louisiana + Mississippi + Washington, D.C." (Compl. ¶ 260.) This allegation does not support a finding that "events having operative significance in the case" occurred in the District of Columbia, and does not relate to Kaul's claims at all.

Plaintiffs introduce several new factual allegations in their opposition to the first motion to sever and transfer, stating that "the Defendants conduct their political and other business in the

District of Columbia, and their crimes were perpetrated across state lines using the US wires and mail;" that the revocation of Kaul's New Jersey medical license "prevent[ed] Kaul from obtaining a license in any other state, including the District of Columbia;" and that the District of Columbia was the main location where the "schemes of racketeering were planned." (Pls. Severability Opp. at 12–14.) These allegations, which appear nowhere in their Complaint, are not "well-pled," *see Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020) (citation omitted) ("In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true . . . ."), and cannot be considered "substantial" in the face of a roughly 170-page Complaint which focused on events occurring in New Jersey, and which alleges no relevant events or occurrences in the District of Columbia. *Cf. Maysaroh, LLC*, 51 F. Supp. 3d at 93 (collecting cases in which venue was found improper where a negligible proportion of the plaintiffs' overall allegations occurred in the District of Columbia). Moreover, a plaintiff may not amend a complaint by way of responsive brief. *Smith v. Mayor*, 191 F. Supp. 3d 114, 116–17 (D.D.C. 2016), *aff'd sub nom. Smith v. Mayor, D.C.*, No. 16-7109, 2017 WL 2193615 (D.C. Cir. May 19, 2017). The court thus cannot find that the allegations relating to the District of Columbia make up a substantial part of the events giving rise to Plaintiffs' claims and venue in this district is therefore inappropriate under § 1391(b)(2).

Conversely, many of the events and occurrences underlying Kaul's claims did occur in New Jersey. Kaul was licensed to practice medicine in New Jersey, the adverse insurance judgments against him occurred in New Jersey, and his medical license was subsequently revoked in New Jersey. (Compl. ¶¶ 21, 81, 97, 109.) Moreover, many of the Defendants reside or are based in New Jersey, (Compl. ¶¶ 24–57), and conduct their business there. Venue under § 1391(b)(2) therefore would be appropriate in the District of New Jersey.

The other subsections of 28 U.S.C. § 1391(b) likewise fail to support venue in this district. Under § 1391(b)(1), venue is not appropriate here because not all the Defendants reside in the District of Columbia. Furthermore, because venue in the District of New Jersey is appropriate under § 1391(b)(2), venue in this district is not appropriate under § 1391(b)(3), which only serves as a source of proper venue when "there is no district in which an action may otherwise be brought" in accordance with § 1391(b)(1) or § 1391(b)(2).

When a court finds that venue is improper, "[t]he decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp.*, 722 F.2d at 789. Here, there are already multiple related cases pending in the District of New Jersey, each involving overlapping allegations and actors. *See supra* Part 1.A.4. Moreover, New Jersey undoubtedly has a greater interest in resolving Kaul's claims, which involve mostly New Jersey actors and events.

Plaintiffs allege that the New Jersey Defendants seek severance and transfer because the District of New Jersey is "corrupted," and, thus, "in the interests of justice the case must be litigated in the United States District Court for the District of Columbia." (Pls. Severability Opp. at 1.) These unsupported allegations cannot be properly considered by the court. "[C]ourts have not considered judicial bias in conducting ends-of-justice analyses" relating to the transfer of an action to a proper venue. *Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 44 (D.D.C. 2003). And, to the extent that a plaintiff can show "such a high degree of favoritism or antagonism as to make fair judgment impossible," he may move for recusal.[14]  *Id.* at 44–45 (quoting *Liteky v. United*

---

[14]  Two New Jersey District Court judges have already recused themselves in Kaul's other actions. Judges Kevin McNulty and Brian Martinotti were not, as Plaintiffs represent, "disqualified" from Kaul's prior cases. (*See* Pls. Severability Opp. at 14, 20.) Rather, Judge McNulty recused himself when Kaul sued Senator Charles Schumer, Judge McNulty's brother-

*States*, 510 U.S. 540, 555 (1994); then citing 28 U.S.C. §§ 144 (directing a district judge to recuse himself upon receipt of a sufficient affidavit alleging personal bias or prejudice), 455 (directing any federal judge to disqualify himself in any case where his impartiality might reasonably be questioned or where he has a personal bias or prejudice)).

Therefore, instead of dismissing this action as to the New Jersey Defendants, the court will exercise its discretion and transfer the case to the District of New Jersey in the interest of justice. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Ellis-Smith v. Sec'y of the Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962)) ("Although the decision to transfer or dismiss is committed to the sound discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal.").

### B. <u>Motions to Dismiss Feldman Claims</u>

Defendants MMB and CMB have each moved to dismiss Feldman's claims under Federal Rule of Civil Procedure 12(b)(1), alleging lack of subject matter jurisdiction due to their Eleventh Amendment sovereign immunity from suit. Defendant Stanley has moved to dismiss Feldman's claims for lack of personal jurisdiction due to insufficient process and insufficient service of process.

---

in-law. (*See* Allstate Br. at 5 n.6.) Similarly Judge Martinotti recused himself from Kaul's other pending cases when Kaul sued him in this case. (*See* Allstate Br. at 7 n.9.)

1.  Motions to Dismiss for lack of Subject Matter Jurisdiction Due to Eleventh Amendment Sovereign Immunity

    i.  *Legal Standard*

The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Sovereign immunity applies not only to "actions in which a State is actually named as the defendant," but also to actions "against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 872 (D.C. Cir. 2008). This bar is jurisdictional and precludes federal courts from entertaining suits against the state, "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

"Whether an entity is an arm of the State for purposes of sovereign immunity under the U.S. Constitution is a question of federal law." *P.R. Ports Auth.*, 531 F.3d at 872 (citing *Doe*, 519 U.S. at 429 n.5). To determine whether an entity is an arm of the State for Eleventh Amendment sovereign immunity purposes, "the Supreme Court and [the D.C. Circuit] have generally focused on the 'nature of the entity created by state law' and whether the State 'structured' the entity to enjoy its immunity from suit." *P.R. Ports Auth.*, 531 F.3d at 873 (citations omitted). The D.C. Circuit has identified three relevant factors to consider in this inquiry: "(1) the State's intent as to the status of the entity, including the functions performed by the entity; (2) the State's control over the entity; and (3) the entity's overall effects on the state treasury." *Id.* "Under the three-factor test, an entity either is or is not an arm of the State: The status of an entity does not change from one case to the next based on the nature of the suit, the State's financial responsibility in one case as compared to another, or other variable factors." *Id.*

22

ii.  *Analysis*

1.  Mississippi State Board of Medical Examiners

MMB argues that it is an arm of the state of Mississippi and thus immune from suit under the Eleventh Amendment.  In response, Feldman first alleges that MMB's immunity is limited by the Supreme Court's decision in *N.C. State Board of Dental Examiners v. FTC*, 574 U.S. 494 (2015), in which the Court held that members of the state board of dental examiners were not entitled to *Parker* state-action immunity because they were "market participants" in the field they oversaw, and "did not receive active supervision by the State." *Id.* at 504.[15]  Feldman argues that MMB is likewise not entitled to such immunity, because it is not adequately supervised by the Governor.  (*See* ECF No. 89, Pls. MMB Opp. at 2.)  Second, Feldman argues that as a member of the FSMB, MMB "have aligned themselves and have been willing participants in an *illegal interstate compact* and have ceased to function as an independent state sovereign entity." (Pls. MMB Opp. at 2–3 (emphasis in original).)  Third, Feldman contends that MMB is "self-funded" by fines and fees, and not from the state treasury, and that the "Governor emphatically admits that the executive branch has no supervisory function over the Medical Board." (Pls. MMB Opp. at 3–4.)  Finally, Feldman reiterates his constitutional Due Process, Excessive Fines, and Compact Clause claims against MMB, and alleges a new 4th Amendment

---

[15]  *Parker v. Brown*, 317 U.S. 341 (1943), established that state and municipal authorities are immune from federal antitrust lawsuits for actions taken pursuant to a clearly expressed state policy that, when legislated, had foreseeable anticompetitive effects.  Unlike Eleventh Amendment sovereign immunity, this doctrine may be applied to municipal as well as local authorities and has even been extended in some circumstances to cover non-state entities. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980); *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216 (2013).  However, unlike Eleventh Amendment sovereign immunity, *Parker* immunity requires that an actor be carrying out a clearly articulated state policy and that actor be "actively supervised by the State." *N.C. State Bd. of Dental Examiners*, 574 U.S. at 494.  *Parker* state-action immunity is not at issue here.

violation, arguing that these constitutional claims justify this court's exercise of jurisdiction. (*See* Pls. MMB Opp. at 5–7.)

Under the D.C. Circuit's three-factor test, the court finds that the MMB is an arm of the state for purposes of Eleventh Amendment sovereign immunity.

Plaintiffs do not dispute that "MMB was created by Mississippi statute and exists under that authority as set out in Miss. Code Ann. § 73-43-1 et seq."  (MMB Br. at 8.)  *See also P.R. Ports Auth.*, 531 F.3d at 873 (noting that the first factor to be considered is "the State's intent as to the status of the entity, including the functions performed").  Under its enacting statute, the MMB is vested with a wide array of powers and responsibilities, including setting policies and professional standards regarding the practice of medicine, considering applications for licensure, "[i]nvestigating alleged violations of the medical practice act," "[c]onducting hearings on disciplinary matters involving violations of state and federal law," considering petitions for termination of medical licenses, and promulgating "reasonable rules and regulations."  Miss. Code Ann. § 73-43-11.  "Each member of the state board of medical licensure [must] take the oath prescribed by Section 268 of the Mississippi Constitution of 1890 and file a certificate thereof in the office of the secretary of state."  Miss. Code Ann. § 73-43-9.  Although the statute does not explicitly set forth MMB's purpose, it is clear that it was created to carry out an essential governmental function—oversight of the state's medical profession—and that this function is one "in which the state has a substantial interest due to its concern with the general welfare of its citizens."  *See Williams v. Morgan*, 710 F. Supp. 1080 (S.D. Miss. 1989) (finding the MMB to be immune from suit under Eleventh Amendment sovereign immunity using factors articulated by the Fifth Circuit); *cf. Mothe v. La. State Bd. of Embalmers & Funeral Dirs.*, No.

19-cv-9073, 2019 WL 3753698, at \*4 (E.D. La. Aug. 8, 2019) (finding that statewide, as opposed to local, regulatory responsibilities weigh in favor of sovereign immunity).

Second, Mississippi retains significant control over the MMB.  *See P.R. Ports Auth.*, 531 F.3d at 873 (noting that the second factor is "the State's control over the entity").  The physicians on the MMB are appointed by the governor "with the advice and consent of the senate."  Miss. Code Ann. § 73-43-3; *see also P.R. Ports Authority*, 531 F.3d at 877 ("In considering this factor, we look primarily at how directors and officers . . . are appointed.").  Finally, the Board is not financially autonomous.  *See P.R. Ports Auth.*, 531 F.3d at 873 (noting that the third factor is "the entity's overall effects on the state treasury").  Although the MMB collects licensing fees and fines, its financial decisions are "subject to the boundaries of the state budget, the controlling powers of the State Fiscal Management Board, the concerns of the state treasurer, and the review of the state auditor."  *Williams*, 710 F. Supp. at 1084 (citations omitted).  The court thus finds that the factors outlined by the D.C. Circuit each weigh in favor of a finding that the MMB is an arm of the state entitled to Eleventh Amendment sovereign immunity.

Feldman's arguments to the contrary are unpersuasive.  The Supreme Court's decision in *N.C. State Board of Dental Examiners*, 574 U.S. 494—in which the Court held that the state dental board members were not entitled to *Parker* state-action immunity—is inapposite.  As MMB notes, it "has asserted only one basis for its dismissal in this case—Eleventh Amendment immunity, not Parker state immunity."  (ECF No. 96, MMB Reply at 2.)  Although the D.C. Circuit has not had occasion to directly compare these forms of immunity, other Circuits have found that "case law implicitly recognizes that sovereign immunity and Parker immunity are separate and independent sources of immunity from private federal antitrust claims."  *Rodgers v. Louisiana Bd. of Nursing*, 665 F. App'x 326, 329 (5th Cir. 2016) (citations omitted); *see also*

*Goldfarb v. Va. State Bar*, 421 U.S. 773, 791–92, 792 n.22 (1975) (holding that the Virginia State Bar was not entitled to *Parker* state-action immunity, but noting that the issue of Eleventh Amendment sovereign immunity was to be decided by the district court on remand).

Feldman's argument that MMB has violated the Compact Clause is likewise unavailing. The Supreme Court has found that the Compact Clause, though facially applicable to all interstate Compacts, only applies to compacts infringing on a power that is reserved to the federal government. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 40 n.10 (1994) ("If the creation of a bistate entity does not implicate federal concerns, . . . federal consent is not required." (citing *Virginia v. Tennessee*, 148 U.S. 503, 517–520 (1893))). Establishment and enforcement of "standards of conduct . . . relative to [] health" through medical licensure is not a federal concern but is instead "a vital part of a state's police power." *Barsky v. Bd. of Regents of Univ.*, 347 U.S. 442, 449 (1954). More fundamentally, although an entity created pursuant to an interstate compact will generally not be entitled to Eleventh Amendment immunity, the member states themselves do not revoke their sovereign immunity simply by participating in such a compact. *See Hess*, 513 U.S. at 39–44.

Feldman's contention that the MMB is "self-funded" by fines and fees, rather than receiving funding from the state treasury, and that the "Governor emphatically admits that the executive branch has no supervisory function," is contradicted by the MMB's enacting statute, along with other Mississippi statutes that place fiscal control with the state Fiscal Management Board, the state treasurer, and the state auditor. *See Williams*, 710 F. Supp. at 1084 (citations omitted). Whether the Mississippi Governor's Office chooses to interfere directly with MMB proceedings does not undermine this fiscal control, or the control exercised through the Governor's appointment of MMB's members. *See* Miss. Code. Ann. § 73-43-3

Finally, Feldman's use of constitutional claims to justify the court's jurisdiction in this matter is improper. (*See* ECF No. 89 at 5–7.) The nature of a suit against a state or an arm thereof should not be considered in assessing whether Eleventh Amendment immunity applies. "[A]n entity either is or is not an arm of the State: The status of an entity does not change from one case to the next based on the nature of the suit . . . or other variable factors." *P.R. Ports Auth.*, 531 F.3d at 873; *see also White v. Wash. Metro. Area Transit Auth.*, 303 F. Supp. 3d 5, 10 (D.D.C. 2018) ("[S]uits against a state (or an arm thereof) . . . are barred, regardless of the type of relief sought.").

The MMB is an arm of the state entitled to Eleventh amendment sovereign immunity, which is a bar to this court's jurisdiction, and Plaintiffs' claims against MMB must therefore be dismissed under Rule 12(b)(1).

### 2. California State Board of Medical Examiners

Defendant CMB similarly argues that it is an arm of the state of California and thus immune from suit under the Eleventh Amendment, noting that federal courts have repeatedly so found. *See, e.g.*, *Forster v. Cty. of Santa Barbara*, 896 F.2d 1146, 1149 (9th Cir. 1990); *Bonner v. Med. Bd. of Cal.*, No. 2:17-cv-00445-KJM-DB, 2018 WL 4699996, at *5–6 (E.D. Cal. Sept. 30, 2018); Mir v. Med. Bd. of Cal., No. 12-cv-2340-GPC-DHB, 2013 WL 1932935, at *4–5 (S.D. Cal. May 8, 2013), aff'd, 552 F. App'x. 723 (9th Cir. 2014); Yoonessi v. Albany Med. Ctr., 352 F. Supp. 2d 1096, 1104 (C.D. Cal. 2005). It contends that the D.C. Circuit's three-factor test warrants the same outcome.

Feldman argues that "this court has subject-matter jurisdiction because the Board has shed its cloak of immunity by enforcing an unconstitutional statute." (ECF No. 97, Pls. CMB Opp. at 5.) Citing *Ex parte Young*, 209 U.S. 123 (1908), he contends that "[o]ne well established nuance (or exception) to the principle of sovereign immunity under the Eleventh Amendment is a

suit that challenges the constitutionality of a state official's action in enforcing an unconstitutional state law."  (Pls. CMB Opp. at 5.)  As in his opposition to MMB's Motion, Feldman contends that "the Board has entered an unconstitutional interstate compact," (Pls. CMB Opp. at 5–6), and thus this suit falls within an exception to Eleventh Amendment sovereign immunity.

As with MMB, under the D.C. Circuit's three-factor test, the court finds that the CMB is an arm of the state for purposes of Eleventh Amendment sovereign immunity.

First, the CMB was created by California statute as an entity within the Department of Consumer Affairs.  Cal. Bus. & Prof. Code § 2001, *et. seq.*  As a "board" within this Department, CMB is defined by California law to be part of the "State," specifically as an entity within the executive branch.  *See* Cal. Gov't Code §§ 900.6, 11000(a).  CMB is statutorily tasked with the "[p]rotection of the public" in its exercise of "its licensing, regulatory, and disciplinary functions."  *See* Cal. Bus. & Prof. Code §§ 2001.1, 2004.  Under its enacting statute, an "investigation" by CMB is "deemed to refer to a joint investigation conducted by employees of the [California] Department of Justice and the [California] Health Quality Investigation Unit under the vertical enforcement and prosecution model."  Cal. Bus. & Prof. Code § 2006.  CMB is subject to laws that apply to California state agencies generally, such as the California Administrative Procedure Act and the Bagley-Keene Open Meeting Act.  Cal. Bus. & Prof. Code §§ 2014, 2018.  There is thus overwhelming evidence that in creating the CMB, California intended it to serve as an arm of the State.

This finding is further bolstered by the second and third factors of the D.C. Circuit test. California exercises substantial control over the CMB, which has fifteen members, seven of whom are non-physicians or "public" members.  Cal. Bus. & Prof. Code § 2001(a).  The

governor appoints thirteen of the fifteen total members, each of whom must then be confirmed

by the state senate.  Cal. Bus. & Prof. Code § 2001(b).  The California Senate Committee on

Rules and the Speaker of the California Assembly each appoint one of the remaining two

members.  *Id*.  And CMB's operations are closely tied to the state treasury; all payments to CMB

are required by statute to go into a contingent fund within the state treasury, which may be used

by CMB only upon appropriation by the legislature.  Cal. Bus. & Prof. Code § 2445.  California

pays for judgments against CMB as a state agency.  Cal. Gov't Code § 965; *see also P.R. Ports

Auth.*, 531 F.3d at 878 ("[T]he relevant issue is a State's overall responsibility for funding the

entity or paying the entity's debts or judgments.").  The court thus finds that the factors outlined

by the D.C. Circuit each weigh in favor of a finding that the CMB is an arm of the state entitled

to Eleventh amendment sovereign immunity.

Feldman's invocation of the *Ex parte Young* exception is inapposite and does not impact

the court's finding.  *Ex parte Young* provides that, while "suits against state officials seeking

prospective relief for violations of federal law may be permissible in federal court, suits against a

state (or arm thereof) in its own right are barred, regardless of the type of relief sought."  *White*,

303 F. Supp. at 10 (citing, *inter alia*, *Ex Parte Young*, 209 U.S. at 155–57; *Seminole Tribe of

Florida v. Florida*, 517 U.S. 44, 58 (1996)); *see also Vann v. Kempthorne*, 534 F.3d 741, 749

(D.C. Cir. 2008) ("The basic doctrine of *Ex parte Young* can be simply stated.  A federal court is

not barred by the Eleventh Amendment from enjoining state officers from acting

unconstitutionally, either because their action is alleged to violate the Constitution directly or

because it is contrary to a federal statute or regulation that is the supreme law of the land."

(citation omitted)).  CMB is an arm of the state, and Plaintiffs have not sued a state officer, but

CMB as an entity.  Accordingly, Plaintiffs' claims against CMB are barred by Eleventh

Amendment immunity, and Plaintiffs' claims against it must therefore be dismissed for lack of subject matter jurisdiction.[16]

> 2. <u>Stanley Motion to Dismiss for Lack of Personal Jurisdiction Due to Insufficient Service of Process</u>
>
> > i. *Legal Standard*

Federal courts cannot assert personal jurisdiction over a defendant "unless the procedural requirements of effective service of process are satisfied." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C. Cir. 2002). Under Federal Rule of Civil Procedure 4(c), a "summons must be served with a copy of the complaint" within the time allowed by Rule 4(m), which states:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4 (emphasis added). Rule 4 also sets forth the method for effectuating service. Under Rule 4(e), service of process on an individual within the United States must be made: (1) in accordance with the law "for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (2) by "delivering a copy of the summons and of the complaint to the individual personally"; (3) by "leaving a copy of each at the individual's dwelling or usual place of abode"; or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive service."

---

[16] CMB also moves for judicial notice in support of its pending motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 69.) CMB asks the court to take notice of five decisions and orders documenting the outcome of administrative proceedings relating to the revocation of Kaul's medical license before CMB, LMB, and NJBME. (*See id.*) As the claims against CMB will be dismissed on Eleventh Amendment immunity grounds under Rule 12(b)(1), this motion will be denied as moot.

Fed. R. Civ. P. 4(e).

A plaintiff bears the burden of establishing either proper service of process, *see Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987), or "valid reason for delay" warranting an extension of time to effect service. *Mann v. Castiel*, 681 F.3d 368, 375 (D.C. Cir. 2012) (internal quotation marks and citation omitted). If a plaintiff fails to show good cause for failing to meet the service deadline, "the court has a choice between dismissing the suit and giving the plaintiff more time" to properly effect service. *Battle v. District of Columbia*, 21 F. Supp. 3d 42, 44–45 (D.D.C. 2014) (collecting cases). However, "dismissal of a case pursuant to Rule 4(m) is appropriate when the plaintiff's failure to effect proper service is the result of inadvertence, oversight, or neglect, and dismissal leaves the plaintiff in the same position as if the action had never been filed." *Mann*, 681 F.3d at 376 (internal quotation marks and citations omitted).

### ii. Analysis

Stanley, an attorney in private practice in New Orleans, alleges several defects in Plaintiffs' service. He states that, "[r]ather than serving Stanley personally or at his usual place of abode, plaintiffs sent a copy of the Complaint to Stanley's law office, where it was delivered to an employee of his law firm," (Stanley Br. at 5 (citing ECF No. 23-2, Kennedy Aff. ¶ 4)), which he claims is not permitted under the Federal Rules of Civil Procedure or the local rules of either the District of Columbia or Louisiana. (*See* Stanley Br. at 5 (citing Fed. R. Civ. P. 4; D.C. Sup. Ct. R. Civ. P. 4(e); La. C. Civ. P. arts. 1231, 1232, 1234).) Stanley also claims that Plaintiffs sent only the complaint, rather than serving the summons and complaint together. (Stanley Br. at 5.)

Feldman responds that Stanley's motion was premature, and that proof of service in the form of the process server's sworn affidavit has since been filed, "attesting to a true and correct copy of *summons in a civil action* on December 11, 2019." (ECF No. 60, Pl. Stanley Opp. at 1

(internal quotation marks omitted) (emphasis in original).)  Feldman further contends that the summons and complaint were served on Stanley's "authorized employee Brittany Kennedy," who "admitted receiving the complaint on December 11, 2019 at Stanley's law office."  (*Id.* at 1–2.)  He cites Louisiana Code of Civil Procedure Article 1235 in support of the proposition that service of process does "not require service at home, but allows service upon a legal secretary or assistant."  (*Id.* at 3.)  Finally, Feldman notes that, even if initial service was insufficient, "a copy of this response has been sent to Stanley's email address at his law firm . . . so he already has a copy of the summons," and argues that "[s]ubstituted service by . . . email . . . can be made consistent with due process and Rule 4."  (*Id.* at 4.)

Stanley disputes Feldman's representation that the summons was served on Kennedy, (ECF No. 78, Stanley Reply at 1–2 (citing Kennedy Aff. ¶ 6)), but notes that even if that were true, it would not constitute proper service.  Stanley further contends that Feldman's reliance on Louisiana Code of Civil Procedure Article 1235 is improper, as that provision relates to service upon a party's legal representative, rather than service on an attorney in their capacity as a defendant.  (*Id.* at 2.)  Stanley further claims that although Feldman purports to have served Stanley "on January 22, 2020 by emailing a copy of the summons and proof of service," this manner of service is not authorized by law, any such alleged service was not within the 90-day time limit set by Rule 4, and, regardless, Stanley never received the email.  (Stanley Reply at 3 (citing ECF No. 78-1, Stanley Aff. ¶ 4).)

The court is persuaded by Stanley's argument that Plaintiffs have failed to satisfy the procedural requirements for proper service of process.  Plaintiffs have not alleged that they served Stanley personally or that they left, or caused their agent to leave, a copy of the summons and complaint at Stanley's home, and Stanley did not authorize any other individual to accept

32

service on his behalf. *See* Fed. R. Civ. P. 4(e). (S*ee also* Stanley Aff. ¶ 3.) Moreover, the District of Columbia rules for service of process on an individual within the United States mirror the requirements of the Federal Rules, but for the addition of service of process by registered mail or by first class mail with notice and acknowledgment, neither of which were attempted here. *See* D.C. Sup. Ct. R. Civ. P. 4(c), 4(e). Thus, Plaintiffs have failed to comply with either the federal or D.C. procedural requirements for adequate service of process.

Moreover, neither service on a secretary at a defendant's place of business, nor service via email are permitted under Louisiana law. *See* La. Code Civ. P. arts. 1231, 1232, 1234. Rather, service of process on an individual "may be either personal or domiciliary." La. Code Civ. P. art. 1231. Despite Feldman's contention to the contrary, the fact that Stanley is an attorney by profession does not alter this analysis. *See Jefferson Cmty. Health Care Ctr., Inc. v. Roby*, 180 So. 3d 585, 587–88 (La. App. 5th Cir. 2015) ("Service of citation or other process may be either personal or domiciliary. . . . In order for this initial service of the petition at [defendant attorney]'s office to have been valid, it must have been effected on him personally because he is a party, not counsel of record." (citations omitted)); *cf.* La. Code. Civ. P. art. 1235(B) ("Service on an attorney, *as a representative of a client*, is proper when the attorney's secretary is served in the attorney's office." (emphasis added)).

Feldman argues that the court should permit the alleged email to Stanley to serve as "substitute service" in lieu of service under the Federal and state rules. (*See* Pl. Serv. Opp. at 4–5.) Substitute service is not appropriate here. Each of the cases upon which Feldman relies involved extraordinary extenuating circumstances and only permitted substitute service upon motion to the court. *See, e.g. Jacob v. Roberts*, 223 U.S. 261, 267 (1992) (describing extensive efforts to locate and serve defendants outlined by affidavit in support of substitute service before

trial court authorized service by publication); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 317 (1950) (approving substitute service upon defendants "missing or unknown,"

"whose interests or whereabouts could not with due diligence be ascertained"). Furthermore,

several of the cases Feldman proffers involved defendants located outside of the United States,

for whom Rule 4 explicitly provides for alternative means of service "as the court orders." *See*

Fed. R. Civ. P. 4(f).[17]  No similarly extenuating circumstances exist here, nor does the record

indicate any difficulty in locating the defendant for personal or domiciliary service, nor even any

effort on the part of Plaintiffs to do so. Thus, the court need not address the parties' factual

dispute regarding whether the summons itself was included in the materials Plaintiffs claim to

have served—the manner of service was ineffective in either case.

      Plaintiffs have not requested additional time in which to properly serve Stanley, and the

court does not find that such leniency is warranted. Plaintiffs filed their Complaint on October 1,

2019. Later that same month, the court issued an Order advising Plaintiffs of their

"responsibility to comply with this court's Local Civil Rules, as well as the Federal Rules of

Civil Procedure" and specifically noting that this included "Rule 4 which requires service upon

---

[17]  *See, e.g.*, *Rio Properties, Inc. vv. Rio Int. Interlink*, 284 F.3d 1007 (9th Cir. 2002) (noting that
"service [on an international defendant] under Rule 4(f)(3) must be (1) directed by the court; and
(2) not prohibited by international agreement"); *Bank Julius Baer & Co. Ltd. v. Wikileaks*, No.
08-cv-00824, 2008 WL 413737 (N.D. Cal. Feb. 13, 2008) (granting request for alternate service
where defendant was foreign and where plaintiffs presented evidence that a physical address
could not be located after due effort); *BP Products North America, Inc. v. Dagra*, 236 F.R.D.
270 (E.D. Va. 2006) (finding that "service by publication to a defendant in a foreign country is
an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to
locate the defendant and serve process by traditional means"); *Juniper Networks, Inc. v.
Bahattab*, No. 07-cv-1771, 2008 WL 250584 (D.D.C. Jan. 30, 2008) (finding that where
"Defendant [was] a resident of Saudi Arabia" and "Plaintiff has attempted, without success, to
serve the defendant via mail and personal service," an alternative means of service was
warranted).

each defendant within 90 days after filing the complaint." (Pro Se Pl. Order at 1.) The Order further noted that failure to comply with the court's orders or with the Federal Rules of Civil Procedure "may result in sanctions, up to and including dismissal of this action." (*Id.* at 2 (emphasis omitted).) Although they are proceeding *pro se*, Plaintiffs are highly educated and experienced in utilizing the court system. *Cf. Mann*, 681 F.3d at 377 (finding that the latitude the court "typically affords *pro se* litigants to correct defects in service of process was unwarranted" where "the two *pro se* plaintiffs had been notified of the requirements" of Rule 4 and were not "typical, unsophisticated *pro se* litigants" (internal quotation marks omitted)).

Plaintiffs have had ample time since they filed their Complaint to request an extension from this court in order to properly serve Stanley and have been on notice at least since Stanley's motion was filed on January 3 of this year that their service might be defective, yet have not sought to remedy it. "[A] plaintiff's *pro se* status does not constitute a license for a plaintiff filing pro se [sic] to ignore the Federal Rules of Civil Procedure or to disregard completely court orders." *Garlington v. D.C. Water & Sewer Auth.*, 62 F. Supp. 3d 23, 27 (D.D.C. 2014) (internal citations and quotation marks omitted). This court will therefore dismiss the claims against Stanley for insufficient service of process.

### IV.    CONCLUSION

For the foregoing reasons, the court will GRANT the New Jersey Defendants' motions to sever and transfer, (ECF Nos. 47 & 82), and will therefore DENY without prejudice the pending motions to dismiss by the New Jersey Defendants.  (ECF Nos. 47, 67, 82, & 112.)  The court will also GRANT the other motions to dismiss, (ECF Nos. 23, 68, & 70), and will DENY as moot the request for judicial notice, (ECF No. 69), as moot.  A corresponding order is forthcoming.

Date:  November 30, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge